JNK:sr

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6117-CR-HUCK

UNITED STATES OF AMERICA,        :

        PLAINTIFF,        :

v.        :

MARK ROSEMAN,        :

        DEFENDANT.        :

_____

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S OBJECTIONS TO THE PSI

The United States of America, by and through its undersigned counsel, hereby opposes the defendant's objections to the PSI, and states as follows:

1.    On January 24, 2001, the defendant pled guilty to Counts I and II of a superceding information, which charged him in Count I with conspiracy to commit bank fraud, to defraud HUD, to commit loan application fraud, mail and wire fraud, and to commit money laundering and in Count II with making false statements to HUD. The plea agreement entered into between the parties states in paragraph 7 as follows:

> The parties jointly agree, while not binding on the Court or the Probation Office, that the sentence imposed shall be a term of 84 months.

1



2. The PSI initially reflected that the defendant's guideline range was 188 to 235 months with a total offense level of 36 and a criminal history Category I. The defendant objected to the PSI claiming that the defendant was entitled to a reduction for acceptance of responsibility, that he should not be enhanced as an organizer, leader of the criminal activities, and that the PSI overstates the amount of the defendant's money laundering activities. The defendant's initial objections do not state how far the defendant's money laundering activities were overstated.

3. The addendum to the PSI provided the defendant with a two point reduction for acceptance of responsibility and denied the remaining objections. The addendum to the PSI reflected a guideline range of 151-188 months based on an offense level of 34 and a criminal history Category I.

4. On April 30, 2001, 3 days before the continued sentencing date for the defendant, the government received the defendants sentencing memorandum, which now states that his recommended guideline range is either 46-57 months or 51-63 months. The defendant believes he is entitled to three points for acceptance of responsibility, no points for leader-organizer, and only 4-5 points as the amount of the laundered funds was less than $1,000,000. The defendant then attaches the Aleph Institute's Alternative Punishment Proposal, wherein it requests a sentence below the guideline range.

## BREACH OF THE PLEA AGREEMENT

5. The defendant in suggesting to the Court that the sentence of the defendant should be below 84 months has blatantly violated the plea agreement. The government and the defendant agreed in paragraph 7 to jointly recommend a sentence of 84 months. Now the defendant suggests to the Court that the defendant's guidelines should be less. The defendant's suggestion to the Court

2

that he be sentenced to less than 84 months is a blatant breach of the plea agreement. The defendant attempts to downplay any such breach by suggesting on page 1 of his sentencing memorandum that regardless of the agreement between the government and Roseman, the Court may impose any sentence it feels appropriate within the Federal Sentencing Guidelines. By doing this, the defendant is talking out of both sides of his mouth. On one side he is telling the court that he should be sentenced to 84 months. Out of the other side of his mouth he is suggesting that the sentence should be less. The defendant can only speak with one voice. Either he states his sentence should be eighty-four months or not. It is not as if the defendant was unaware of how the guidelines were calculated. As the defendant states in his sentencing memorandum, a significant amount of time was spent on pre-indictment plea negotiations where the guidelines were discussed. How is it possible that in three months that the defendant can go from signing a plea agreement wherein he agrees to jointly recommend a sentence of 84 months and now suggests that the sentencing guideline should be as low as 46-57 months? The Court should first ask the defendant whether he intends to honor the plea agreement by whole-heartedly recommending that he be sentenced to 84 months. If he agrees to honor his plea agreement then he should agree to withdraw any objections to the extent they reduce the guidelines below 84 months. If the defendant does not want to withdraw the objections then the plea agreement should be withdrawn and the defendant will face a potential guideline range as originally calculated by probation of 188-235 months.

### THE OBJECTIONS ARE FRIVOLOUS

6.     Furthermore, the objections of the defendant are frivolous. The defendant claims that the money laundering enhancement should only be for his accumulated proceeds from the transaction of $553,237 or $953,086. Clearly, this is incorrect. The defendant pled to a two count

3

superceding information, which charges the defendant in Count I with conspiracy to commit bank fraud, to defraud HUD, to commit loan application fraud, wire fraud and mail fraud and to commit money laundering. By his plea he admitted to the allegations in paragraph 6 of Count I, which states that he and his coconspirators submitted false information and documentation to lending institutions, which caused fraudulent loans to be issued totalling in excess of $15,000,000. As noted in the Background Application Note to Section 2S1.1 of the Sentencing Guidelines, the guideline prohibits financial transactions involving funds that are the proceeds of "specified unlawful activity" if such transactions are intended to facilitate that activity. Bank fraud, loan application, mail fraud and wire fraud are specified unlawful activities as defined in 18 U.S.C. Section 1956. Defendant admitted through his plea the allegations contained in paragraph 34 that the defendant did engage in financial transactions with the proceeds from the fraudulently obtained loans and did promote the conspiracy by continuing to purchase new properties and making payments to coconspirators and others for activities done in furtherance of the scheme. The defendant, himself, received over $6,000,000 in bank fraud proceeds, which was then used to further the scheme by the purchasing of additional properties and the paying of expenses. He also paid money that went to pay others to prepare fraudulent tax returns and Form W-2's, to act as false references, to pay the buyer's cash to close and numerous other payments. The defendant is also responsible under Section 1B1.3 of the Sentencing Guidelines for the financial transactions of his coconspirators. His partner Jack Kudron and his other coconspirators paid millions of dollars to promote the scheme including making kickbacks to buyers. The total amount of the financial transactions in this case far exceed $10,000,000.

7.   The defendant's calculations are clearly erroneous as he includes the net proceeds he

received from the transactions he claimed involvement. First, he is responsible under the guidelines for not only his financial transactions, but also those of his coconspirators. Second, under Section 2S1.1 the defendant is responsible for all financial transactions with proceeds from a specified unlawful activity, not just the net proceeds received. The defendant alone received over $6,000,000 that was reinvested in purchasing new properties and other expenses for the scheme. He is also responsible for the amounts spent by his co-defendants. As noted in United States v. Thompson, 40 F.3d 48, (3rd Cir. 1994), in calculating the sentencing guidelines for a money laundering offense it is not the amount of the loss that governs the measure of the sentence imposed, it is the value of the funds involved in the money laundering transactions. "Thus, the measure of harm under Section 2S1.1 is the total amount of the funds involved". United States v. Johnson, 971 F.2d 562, 576 (10th Cir. 1992). See also, U.S. v. Barrios, 993 F.2d 1552, 1524 (11th Cir. 1993). In a promotional money laundering conspiracy the value of the funds involved include the reinvestment of all proceeds from the unlawful scheme, including checks written to pay office supplies, secretarial services, office staff wages, etc. See e.g. U.S. v. Hildrebrand, 152 F.3d 756, 762 (8th Cir. 1998); U.S. v. Ross, 210 F.3d 916, 920 (8th Cir. 2000). As the funds expended by the defendant and his co-conspirators far exceed $10,000,000, the defendant's objection must be denied.

  8. The defendant was also the organizer and leader of a conspiracy involving 5 or more persons. The defendant and his partner Jack Kudron became partners in the early 1990's. They would find properties for sale and decide which one should buy it or whether they should be partners. All the co-conspirators have stated up until the very end that Kudron and the defendant were inseparable. The defendant and Kudron started the scheme. In the beginning they both prepared fake credit reference letters for FP&L, Southern Bell and other creditors. They both

prepared fake W-2's, and solicited co-defendant Lawrence to prepare fake Form 1040's. When they created fake documents such as fake pay stubs or fake gift letters they would ask each other how the documents looked before sending them to the bank. They both paid the cash to close for buyers and made deposits for buyers "to make it appear as if the buyer had sufficient funds to purchase the house". These same fraudulent documents and methods were used throughout the conspiracy and the defendant and Kudron helped train other co-conspirators. When James Lowe and Marc Gordien each joined the conspiracy they had to meet with both the defendant and Kudron.

9. The defendant was the financial backer for almost every transaction. As Marc Gordien stated, because the defendant had his money in each transaction he wanted to know what was going on in each transaction. It is clear that without the defendant's money the others could not have engaged in such a massive conspiracy. Throughout the conspiracy the defendant and Jack Kudron were equal partners sharing equally in profits or deals and sharing input. It is only now at his sentencing that the defendant claims that he was not Kudron's partner and that Kudron was organizer and leader. The defendant's argument is absolutely baseless.

10. The defendant also claims he is entitled to three points for acceptance of responsibility. Application Note 3 to Section 3E1.1 of the Sentencing Guidelines states that a defendant who enters a guilty plea is not entitled to acceptance of responsibility as a matter of right. Instead, he must truthfully admit his conduct and not falsely deny his conduct and any additional relevant conduct. In his sentencing memorandum, the defendant has attempted to minimize his role and blame the conspiracy on others. Further, the third point for acceptance of responsibility is for timely notifying authorities of the defendants intention to plead guilty and thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

The defendant announced his intention to plea prior to picking the jury and the jury was then sent home. Certainly this is not timely notification.

11. The defendant has also filed an amended Sentencing Memorandum claiming that the Court should depart from the Sentencing Guidelines and sentence the defendant to 57-71 months. This recommendation is based on paragraph 100 of the revised PSI which states that the decision in U.S. v. Rodriguez, 64 F.3d 638 (11th Cir. 1995), may be a grounds to warrant a downward departure, because the defendant did not get the benefit of his acceptance of responsibility. In Rodriguez, the defendant was charged with using a communication facility in the commission of a drug felony. The defendant pled guilty to both counts under a written guilty plea. The defendant's guidelines far exceeded the statutory maximum for the offense, and the defendant did not get a benefit of acceptance of responsibility. The issue on appeal was whether the Court had the authority to grant a downward departure to give the defendant the benefit of acceptance of responsibility. The Appellate Court held that the District Court had the authority. The Appellate Court reasoned that the defendant's receiving acceptance of responsibility is necessary to provide an incentive for a defendant to engage in plea bargaining.

12. This case is clearly distinguishable from Rodriguez. In this case the defendant was facing a statutory maximum sentence of well over 100 years. According to the revised PSI, the guideline range with acceptance of responsibility for the defendant was 151-188 months. In order to facilitate a plea the parties agreed on the eve of trial to file a superceding information with statutory maximum of 84 months. The parties agreed in the plea agreement to jointly recommend a sentence of 84 months. The superceding information was the defendant's incentive to engage in a plea bargain. To further emphasize the fact that acceptance of responsibility was unimportant the

standard paragraph regarding the government's recommendation of acceptance of responsibility for the defendant was eliminated. Thus, there was no mention of acceptance of responsibility in the plea agreement. Further, as noted above, the defendant is now minimizing his role and should not be granted acceptance of responsibility. Thus, no downward departure is warranted.

## CONCLUSION

For the foregoing reasons, the defendant's objections to the PSI should be denied, and the defendant should be sentenced to 84 months.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: _____
JEFFREY N. KAPLAN
ASSISTANT U.S. ATTORNEY
FLA BAR NO. A500030
500 E. Broward Blvd.
Ft. Lauderdale, Fl 33394
(954) 356-7255
(954) 356-7336

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed on this /st day of May, 2001 to H. Dohn Williams, Esq., 799 Brickell Ave., Suite 900, Miami, Fl 33131 and Ed Cooley, U.S. Probation, 299 E. Broward Blvd., Ft. Lauderdale, Fl. 33301.

_____
JEFFREY N. KAPLAN
ASSISTANT U.S. ATTORNEY